IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| KENNON MULLEN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 5:24-cv-387 (MTT) |
| ) | |
| GAS POS INC, ) | |
| ) | |
| Defendant. ) | |

# ORDER

Plaintiff Kennon Mullen filed this action against his former employer, Gas POS, Inc., alleging that Gas POS terminated Mullen without cause in violation of their employment contract.  Doc. 1.  Gas POS has moved to stay this action and compel the arbitration of Mullen's claims.[1]  Docs. 11, 16.  For the following reasons, Gas POS's motions to stay this action and compel arbitration (Docs. 11; 16) are **DENIED**.

## I. BACKGROUND

On November 30, 2021, Mullen signed an employment contract with Gas POS.  Doc. 1 at 6-16.  The contract contained this arbitration clause:

> Except as provided in section 11(b) below, Employee agrees that any dispute or controversy arising out of or relating to any interpretation, construction, performance, or breach of this Agreement shall be settled by arbitration to be held in Birmingham, AL, in accordance with the rules then in effect of the American Arbitration Association.
>
> Doc. 12-4 at 9-10.

---

[1] Gas POS initially moved only to compel arbitration under 9 U.S.C. § 4.  Doc. 11.  In its reply brief, Gas POS moved "to stay the proceedings pending completion of arbitration" under 9 U.S.C. § 3.  Doc. 16 at 1.

Mullen was employed at Gas POS until March 22, 2024, when he was allegedly terminated without cause.  Doc. 1 ¶ 13.  On July 11, 2024, Mullen submitted a demand for arbitration to the American Arbitration Association ("AAA"), seeking $333,780 in compensatory damages for wrongful termination.  Doc. 12-4 at 3-4.

On July 25, 2024, the AAA informed Mullen that Gas POS "had not complied with [the AAA's] requests in the past to abide by [the AAA's] Employment Due Process Protocol and/or [the AAA's] Employment arbitration rules."[2]  *Id.* at 15.  Consequently, the AAA stated that it "[would] not administer any employment-related claims involving [Gas POS] until such time as the employer notifie[d] [the AAA] of its intent to abide by the Protocol and Rules."  *Id.*

On July 29, 2024, counsel for Mullen informed Gas POS that the AAA had refused to arbitrate his claims and that he planned "to file a lawsuit in federal court in Georgia."  Doc. 12-4 at 2.  According to Joshua Smith, Gas POS's Chief Executive Officer, Gas POS did not know about its non-compliance with the AAA's employment rules until the July 29 email.[3]  Doc. 16-2 ¶ 22.

Gas POS made no effort to remedy its violations with the AAA, and Mullen then filed this action on October 28, 2024.  Doc. 1.  On February 27, 2025, seven months after being notified of the AAA's refusal to arbitrate Mullen's claims, Gas POS asked the AAA to reconsider its position and administer the claim between Mullen and Gas POS.

---

[2] There is no evidence of how Gas POS violated the AAA's employment rules or when that violation occurred.

[3] Smith claims the AAA was sending notices, including Mullen's demand and the denial letter, to a residential address that had not been associated with Gas POS since May 2024.  Doc. 16-12 ¶ 22.  Smith also states that Gas POS's former general counsel was terminated in February 2024 "[d]ue to misfeasance, nonfeasance, and/or maleficence."  *Id.* ¶ 26.  It is unclear whether the residential address in the AAA's records belonged to Gas POS's former general counsel or whether Gas POS's former general counsel is responsible for its violations of AAA employment rules.

Doc. 16-1 at 2.  On March 3, 2025, the AAA agreed to "accept future cases as long as the AAA rules and protocols are abided by" and asked Gas POS to inform the AAA if it wished "to refile the previously filed case or any new cases." *Id.*  That day, Gas POS moved to compel arbitration.  Doc. 11.

## II. STANDARD

The enforceability of an arbitration agreement is a matter of contract.  *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1955).  "[T]he Federal Arbitration Act ("FAA") requires courts to 'place arbitration agreements on an equal footing with other contracts and enforce them according to their terms.'"  *Hernandez v. Acosta Tractors, Inc.*, 898 F.3d 1301, 1304 (11th Cir. 2018) (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)).  "[T]he first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute."  *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985).  Second, courts consider "whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims."  *Id.*  Here, Mullen and Gas POS agree that their contract contains a valid arbitration clause.  Docs. 11 ¶ 24-25; 12 at 1.  Thus, the only issue is whether legal constraints external to the employment contract foreclose arbitration.

"The [FAA] provides *two parallel devices* for enforcing an arbitration agreement: a stay of litigation in any case raising a dispute referable to arbitration, § 3, and an affirmative order to engage in arbitration, § 4."  *Merritt Island v. Woodwerx LLC v. Space Coast Credit Union*, 2023 WL 8699470 at *4 (M.D. Fla. Dec. 15, 2023) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983)).

"Section 3 of the [FAA] requires courts to stay a case that is covered by a binding arbitration clause…so long as 'the applicant for the stay is not in default in proceeding with such arbitration.'" *Hernandez*, 898 F.3d at 1305 (quoting 9 U.S.C. § 3). "To determine whether a party has defaulted for Section 3 purposes, a court must 'decide if, under the totality of the circumstances, the party has acted inconsistently with the arbitration right.'" *Bedgood v. Wyndham Vacation Resorts*, 88 F.4th 1355, 1369 (11th Cir. 2023) (quoting *Ivax Corp. v B. Braun of Am., Inc.*, 286 F.3d 1309, 1315-16 (11th Cir. 2002), *abrogated in part on other grounds by Morgan v. Sundance, Inc.*, 596 U.S. 411, 419 (2022)).

Under § 4, "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States District Court…for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. "Section 4 prescribes two conditions to relief." *Merritt Island Woodwerx LLC v. Space Coast Credit Union,* 137 F.4th 1268, 1275 (11th Cir. 2025) (quoting *Bedgood*, 88 F.4th at 1275). "They are separate, but they are causally related: first, the party resisting arbitration must have failed, neglected, or refused to arbitrate; and second, the party seeking to direct arbitration must have been aggrieved by that failure, neglect, or refusal." *Id.* (quoting *Bedgood*, 88 F.4th at 1275).

### III. DISCUSSION

Mullen argues that Gas POS is not entitled to a motion compelling arbitration and staying this action because Gas POS is, or was, in default under § 3 and because Gas POS is not a "party aggrieved" under § 4. Docs. 12; 18; 20. The Court agrees.

**A. Gas POS is Not Entitled to an Order Compelling Arbitration or Staying this Action**

The Eleventh Circuit's recent decisions in *Bedgood v. Wyndham Vacation Resorts* and *Merritt Island Woodwerx LLC v. Space Coast Credit Union* are controlling here.  In *Bedgood,* three of the plaintiffs, who had agreed to arbitrate any claims arising out of their timeshare agreements, filed arbitration petitions with the AAA.  *Bedgood*, 88 F.4th at 1359-60.  The AAA rejected the arbitration petitions because the defendant had failed to register its arbitration clause as required by the AAA's consumer rules.  *Id.* at 1361.  The plaintiffs then filed suit, prompting the defendant to move to stay the case and compel arbitration.  *Id.*  The Eleventh Circuit held that the defendant was not entitled to either a stay or an order compelling arbitration because it was in "default" under § 3 and it was not a "party aggrieved" under § 4.  *Id.* at 1365-66.

Mullen argues *Bedgood* requires the conclusion that the Court cannot stay this action and compel Mullen to arbitrate.  But Gas POS responds that in *Bedgood*, the defendant "made no effort to investigate—let alone remedy—its noncompliance before the AAA."  *Id.* at 1366.  Because Gas POS *did* remedy its non-compliance with the AAA, Gas POS argues that *Bedgood* is not applicable.  Doc. 16 at 7.

Any doubt about *Bedgood's* application to this case was dispelled in *Merritt Island*, in which the Eleventh Circuit held that post-complaint attempts to remedy non-compliance with arbitration rules do not cure a default under § 3.[4]  As in *Bedgood*, two of the plaintiffs in *Merritt Island* filed petitions with the AAA pursuant to arbitration clauses in their Master Services Agreements with the defendant.  *Merritt Island*, 137

---

[4] *Merritt Island* was issued after the parties filed their briefs.  Therefore, the Court ordered the parties to file supplemental briefs addressing *Merritt Island's* impact on Gas POS's motion to compel.  Doc. 19.

F.4th at 1270-71.  The AAA declined to administer the plaintiffs' claims because the defendant "ha[d] not submitted its consumer dispute resolution plan for review or paid the fee."  *Id.*  The plaintiffs then filed suit.  *Id.*  But unlike *Bedgood*, the defendant, two days after the complaint was filed, submitted its plan to the AAA for review, paid the filing fee, and secured an agreement from the AAA to administer the claim.  *Id.* at 1272.  Nonetheless, the Eleventh Circuit held, as it did in *Bedgood,* that the defendant had defaulted under § 3 and was not a "party aggrieved" under § 4.  *Id.* at 1275-1276.  The Court held that the defendant's "post-filing conduct cannot cure the prior non-compliance."  *Id.*

Here, Mullen attempted to comply with the arbitration clause by submitting his claims to arbitration with the AAA.  Doc. 12-4 at 3-4.  The AAA refused because Gas POS "had not complied with [the AAA's] requests in the past to abide by [the AAA's] Employment Due Process Protocol and/or [the AAA's] Employment arbitration rules." *Id.* at 15.  Gas POS learned of its non-compliance on July 29, 2024, at the latest, but it did not attempt to remedy its non-compliance until February 2025, seven months later and some four months after Mullen filed suit.  Docs. 12-4 at 2; 16-1 at 1.  Just as in *Bedgood* and *Merritt Island*, the totality of the circumstances here demonstrate that Gas POS acted "inconsistently with its right to arbitrate" by failing to comply with the AAA's protocols and/or rules and by failing "to remedy the barrier it had caused" until long after Mullen filed his complaint.  *Merritt Island*, 137 F.4th at 1274.  Thus, the Court has no authority to stay this case under 9 U.S.C. § 3.

Nor can the Court compel Mullen to seek arbitration for a second time under 9 U.S.C. § 4.  Again, Mullen has already attempted to arbitrate his claims, and any lack of

access to arbitration is the fault of Gas POS.  Accordingly, "there was no 'failure, neglect, or refusal' by which [Gas POS] could have been 'aggrieved.'"  *Merritt Island*, 137 F.4th at 1275 (quoting *Bedgood*, 88 F.4th at 1366).

Gas POS's attempts to distinguish *Merritt Island* and *Bedgood* fail.  Gas POS argues that, unlike the defendant in *Merritt Island*, "there is no evidence that Gas POS was aware of the impediment before the AAA closed the claim and, thus, it did not 'knowingly' permit the impediment to prevent Mullen's arbitration claim."  Doc. 21 ¶ 21.  First, Mullen is not required to prove that Gas POS "knowingly" impeded arbitration to prove that it defaulted under § 3.[5]  At any rate, while the record is silent on whether Gas POS knew of the impediment to arbitration before Mullen submitted his arbitration petition, Gas POS admits that it was notified of its noncompliance three months before the complaint was filed.  Doc. 12-4 at 2.  Yet, it made no effort to remedy its non-compliance until seven months later.  Doc.16-1 at 1.  Thus, it makes no difference whether Gas POS knew about its non-compliance before Mullen filed his petition with the AAA.

Gas POS next argues that this case is distinguishable because it does not fall into one of the two categories of defaults in cases cited by Mullen: "(1) AAA consumer cases (with different rules), and (2) cases where default was found for failure to pay the fees."  Doc. 16 at 9.  But as the Eleventh Circuit made clear, "*Bedgood's* key holdings

---

[5] "While waiver and default are related doctrines, '[t]o determine whether a party has defaulted for Section 3 purposes, a court must "decide if, under the totality of the circumstances, the party has acted inconsistently with the arbitration right."'  That is a distinct question from whether a party has intentionally waived its right."  *Merritt Island,* 137 F.4th at 1274 n.1 (citation omitted) (quoting *Bedgood*, 88 F.4th at 1369).

are not limited to the type of procedural failure on the part of the party now pressing for arbitration; the key is that the failure resulted in a refusal by the AAA to arbitrate and that [the defendant's] actions were inconsistent with asserting its arbitration right at any time before the suit."[6] *Merritt Island*, 137 F.4th at 1275, *see id.* at 1276 ("While we said *Bedgood* was an 'odd case,' our dicta doesn't mean that *Bedgood's* legal rules are circumscribed to the exact facts therein. The facts are sufficiently similar here, so *Bedgood* resolves the issue on appeal.").

Here, Gas POS violated the AAA's employment arbitration protocols and/or rules, which would govern any arbitration between Gas POS and Mullen.[7] That violation caused the AAA to refuse to arbitrate Mullen's claims, and Gas POS did not attempt to remedy its violation until after the complaint was filed. Although this case is not factually identical to *Merritt Island* and *Bedgood*, their "key holdings" apply. Accordingly, the Court concludes that Gas POS is not entitled to an order staying this action or compelling arbitration.

---

[6] Gas POS makes much of the fact that *Bedgood* and *Merritt Island* were both consumer cases. It argues that those cases do not apply here because the consumer rules provide that AAA arbitration is "essential," and, thus, those parties could not seek appointment of a new arbitrator when the AAA declined to arbitrate. *E.g.*, Doc. 16 at 7. However, the question is not whether the court can appoint a new arbitrator—it is whether the FAA provides the Court with authority to compel *any* arbitration. And because the conditions to relief are not met under §§ 3 and 4, the Court does not have authority to act under the FAA.

[7] Gas POS further contends that it has not defaulted because its violation of the AAA rules was not "behavior specific to [this] case." Doc. 16 at 7. But even if Gas POS's violations of the AAA rules were not directly connected to Mullen's petition for arbitration, its failure to comply with the AAA's request to follow its rules was a barrier to Mullen's attempt to arbitrate in an authorized forum. Thus, failing to timely remove that barrier was inconsistent with Gas POS's right to arbitrate.

**B. Gas POS is Not Entitled to the Appointment of Another Arbitrator Under 9 U.S.C. § 5**

Gas POS also requests that the Court appoint an alternate arbitrator under 9 U.S.C. § 5.  Docs. 16 at 6; 21 at 2.  "Section 5 of the FAA provides a mechanism for appointment of an arbitrator where 'for any reason there shall be a lapse in the naming of an arbitrator.'"  *Brown v. ITT Consumer Financial Corp.*, 211 F.3d 1217, 1222 (11th Cir. 2000).  This mechanism ensures that "[t]he unavailability of [the chosen arbitrator] does not destroy the arbitration clause."  *Id.*  However, courts cannot appoint alternative arbitrators if "the choice of forum is an integral part of the agreement to arbitrate, rather than an 'ancillary logistical concern.'"  *Id.*

Gas POS argues that here, unlike *Merritt Island* and *Bedgood*, the Court can appoint an alternate arbitrator under § 5.  Doc. 21 ¶ 10.  Thus, as Gas POS argues, Mullen's previous pursuit of arbitration with the AAA is not dispositive, and *Merritt Island* and *Bedgood* are "of limited application."  *Id.*  Both *Merritt Island* and *Bedgood* involved consumer arbitrations, and the consumer rules specify that "AAA administration…shall be an essential term" and that if the AAA declines administration, "either party may choose to submit its dispute to the appropriate court for resolution."  *Rule 1*, Amer. Arb. Assoc. Consumer Arb. Rules (Feb. 2018) https://www.adr.org/rules-forms-and-fees/archived?Category=Consumer  (last visited July 1, 2025).  Thus, Gas POS is correct that those defendants may not have been entitled to the appointment of a new arbitrator under § 5.[8]  But that does not mean Gas POS is.

---

[8] The Eleventh Circuit did not address whether the parties in *Bedgood* or *Merritt Island* would have been entitled to the appointment of an arbitrator under § 5.  But the court's reasoning forecloses Gas POS's argument.  Gas POS defaulted and stayed in default for months, thwarting Mullen's efforts to arbitrate.

Gas POS's argument relies on the assumption that the AAA is an unavailable forum. In other words, Gas POS assumes there has been a "lapse" in naming an arbitrator, as defined in § 5 of the FAA. That assumption is incorrect—Gas POS admits that the AAA is now willing to administer the arbitration. Docs. 16 at 6-7; 16-1 at 1. Thus, if Gas POS had not defaulted under § 3, the AAA would be an available forum.

And to the extent that Gas POS argues that its default constitutes a "lapse in naming an arbitrator," it provides no support for that argument. The only case cited by Gas POS permitted the appointment of an arbitrator under § 5 when the parties' chosen forum no longer existed. *Brown*, 211 F.3d at 1222 (appointing an arbitrator because "the specified forum…had dissolved."). Gas POS cites no authority, and the Court has found none, that requires the appointment of an arbitrator under § 5 when the purported "lapse" was a result of the movant's default.[^1]

And while the Eleventh Circuit does not appear to have addressed this issue, other district courts in this circuit agree that a defendant who has defaulted under § 3 is not entitled to the appointment of an arbitrator under § 5. *See, e.g., Merritt Island Woodwerx LLC v. Space Coast Credit Union*, 2023 WL 8699470 at *7 (M.D. Fla. December 15, 2023) ("[The defendant] is also under the impression its noncompliance only made the AAA 'unavailable' as a forum, rather than constituted a default…. As plaintiffs note, this Court previously held that an arbitral forum is unavailable 'when it no longer exists or does not even handle private arbitrations,' not 'for merely refusing to arbitrate an agreement,' as the AAA did here."); *see also Garcia v. Mason Contract Products*, 2010 WL 3259922 at *4 (S.D. Fl. Aug. 18, 2010) (rejecting the defendant's

[^1]: Just as "curing" a default does not allow Gas POS to force Mullen back to the arbitration forum, offering to name a different arbitrator does not negate Gas POS's default.

request to arbitrate in a substitute forum because the "defendant has forfeited its right to proceed with arbitration, and is now bound by the normal procedures of federal law"); *Bedgood v. Wyndham Vacation Resorts, Inc, et al.,* 595 F. Supp. 3d 1195, 1204 (M.D. Fla. 2022) ("Accordingly, given the chosen forum is available except for Defendant's previously discussed default, § 5 of the FAA does not apply, and the Court cannot name a substitute arbitrator."), *aff'd in part, vacated and remanded in part,* 88 F.4th 1355 (11th Cir. 2023).

Thus, the Court declines to appoint an alternate arbitrator under 9 U.S.C. § 5.

### IV. CONCLUSION

This Court is not authorized to stay this action because Gas POS defaulted under 9 U.S.C. § 3, and Gas POS is not entitled to an order compelling arbitration because it is not a "party aggrieved" under 9 U.S.C. § 4.  Accordingly, Gas POS's motions to stay this action and compel arbitration are **DENIED**.

**SO ORDERED**, this 11th day of July, 2025.

S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT